**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
Eastern District

_____

| | | |
|---|---|---|
| **THE TRAVELERS HOME AND** | ) | |
| **MARINE INSURANCE COMPANY** | ) | |
| **a/s/o Jill McCue and Mark McCue,** | ) | |
| **One Tower Square** | ) | |
| **Hartford, CT 06183** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **GREE USA, INC.** | ) | |
| **20035 E. Walnut Drive North** | ) | |
| **City of Industry, CA 91789** | ) | |
| | ) | |
| **GREE ELECTRIC APPLIANCES,** | ) | |
| **INC., OF ZHUHAI** | ) | |
| **West Jinjixi Road** | ) | |
| **Xhuhai, China** | ) | |
| | ) | |
| **HONG KONG GREE ELECTRIC** | ) | |
| **APPLIANCE SALES, LTD.** | ) | |
| **2612 Miramar Tower** | ) | |
| **132 Nathan Road** | ) | |
| **Tsin Sha Tsui Kowloon, Hong Kong,** | ) | |
| **S.A.R.** | ) | |
| | ) | |
| **MJC AMERICA LTD** | ) | |
| **d/b/a Soleus International, Inc.** | ) | |
| **20035 E. Walnut Dr. N.** | ) | |
| **City of Industry, CA 91789** | ) | |
| | ) | |
| **MJC AMERICA HOLDINGS CO., INC.** | ) | |
| **20035 E. Walnut Dr. N.** | ) | |
| **City of Industry, CA 91789** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

NOW COMES Plaintiff, The Travelers Home and Marine Insurance Company

("Travelers"), as subrogree of Jill McCue and Mark McCue ("McCue"), by its attorneys, and for its Complaint against the Defendants states as follows:

**PARTIES**

1. Plaintiff, Travelers, is an insurance company formed and existing under the laws of the State of Minnesota and authorized to conduct business in Illinois, with its principal place of business located at One Tower Square, Hartford, CT  06183. At all times relevant, Plaintiff Travelers insured the property at which the fire made the basis of this lawsuit occurred under insurance policy number 0B4645601821038633 1 (the "Policy").

2. Jill McCue and Mark McCue ("the McCue's"), at all times relevant hereto, owned the residence located at 679 Gardenia Lane, Bartlett, Illinois (the "Subject Property").

3. On information and belief, the McCues purchased the dehumidifier at issue in this case, a "SoleusAir Powered by Gree" model GM-DEH-45-1 on July 29, 2012, in the State of Illinois (the "Subject Dehumidifier").

4. Plaintiff Travelers paid monies to and on behalf of the McCues as a result of the damages complained herein and is pursuing this action as a bona fide subrogee of the McCues. Travelers is equitably and contractually subrogated to the full rights, claims, and benefits of McCues against the Defendants.

5. Gree USA, Inc. is a California corporation, with its principal place of business located at 20035 E. Walnut Drive North, City of Industry, CA 91789, and is therefore a citizen of the State of California.

6. Gree USA, Inc. is engaged in the business of designing, manufacturing, marketing, distributing, and/or selling certain household appliances including, but not limited to, dehumidifiers for residential use, including the dehumidifier at issue in this lawsuit.  Gree USA, Inc. is the agent of Gree Zhuhai for purposes of service of process.

2

7.     Gree Electric Appliances Inc. of Zhuhai ("Gree Zhuhai") is a Chinese business entity that most resembles the U.S. business form of a corporation, with its principal place of business located at West Jinjixi Road, Zhuhai, China and is a citizen of the People's Republic of China. Gree Zhuhai designs, manufactures, sells and distributes dehumidifiers, including the dehumidifier at issue in this lawsuit.

8.     Hong Kong Gree Electric Appliance Sales, Ltd. ("Gree Hong Kong") is a Hong Kong, China business entity that most resembles the U.S. business form of a corporation, with its principal place of business located at Unit 2612 Miramar Tower, 132 Nathan Road, Tsin Sha Tsui Kowloon, Hong Kong, S.A.R. Gree Hong Kong is a citizen of the People's Republic of China. Gree Hong Kong at all times material hereto was in the business of designing, manufacturing, selling and/or distributing electronic appliance products, including dehumidifiers.  It is the alter ego of Gree Zhuhai.

9.     Service of process upon Gree Zhuhai and Gree Hong Kong can be accomplished in the United States and without implicating the Hague Convention, as demonstrated in at least the following cases in which Gree Zhuhai and/or Gree Hong Kong were served in the United States, filed a motion to dismiss for improper service, and the motion was denied, service being deemed proper. *State Farm Fire & Cas. Co. v. Gree USA, Inc.*, No. 3:18-CV-349 RLM-MGG, 2019 WL 4674611 (N.D. Ind. Sept. 25, 2019); *Erie Ins. Exch. v. Gree USA, Inc.*, No. 3:CV-18-2126, 2019 WL 1405854 (M.D. Pa. Mar. 28, 2019); *Nationwide Mut. Ins. Co. v. Gree USA, Inc.*, No. CV 18-1105, 2019 WL 1244093 (W.D. Pa. Mar. 1, 2019), report and recommendation adopted, No. CV 18-1105, 2019 WL 1243280 (W.D. Pa. Mar. 18, 2019); *Nationwide Prop. & Cas. Ins. Co. v. Gree USA, Inc.*, No. 2:18-CV-00881, 2018 WL 6419955, (S.D. Ohio Dec. 6, 2018); *Nationwide General Insurance Company v. Gree USA, Inc., et al.*, 3:18-cv-12607 (E.D. Mi. November 7, 2018). The

Hague Convention is not implicated when service of process is made in the United States, not abroad.

10.     Gree USA, Inc. was at all times relevant hereto, and is currently, the alter ego of Gree Electric Appliances Inc. of Zhuhai and Gree Hong Kong. At all times relevant hereto Gree Zhuhai exerted such control over Gree USA, Inc. and over Gree Hong Kong as to cause the companies to lose their separate identities, including Gree Zhuhai having control over Gree USA's day-to-day activities, sharing the same corporate officers, commingling branding, assuming debts, and other such control.

11.     Both Gree USA and Gree Hong Kong have represented to other U.S. federal and state courts that neither of these entities has any employees outside of China, where the controlling parent company, Gree Zhuhai, is headquartered.

12.     Defendant MJC America Ltd. d/b/a Soleus International Inc. ("MJC America") was and still is, under information and belief, a domestic corporation duly organized and existing under the laws of the State of California with its principal place of business located at 20035 E. Walnut Drive North, City of Industry, California 91789.

13.     MJC America Holdings Co., Inc. ("MJC Holdings") is and was at all times mentioned herein a privately held corporation incorporated under the laws of the State of California, having its principal place of business located at 20035 E. Walnut Dr. N., City of Industry, CA 91789.  Hereinafter, both Defendants MJC America, Ltd. d/b/a Soleus International Inc. and MJC America Holdings Co., Inc. are referred to collectively as "MJC" herein.

14.     Upon information and belief, at all relevant times herein, MJC was a minority owner of Gree USA.

## JURISDICTION / VENUE

15.     At all times relevant, Gree Zhuhai, Gree Hong Kong, Gree USA, Inc. (collectively referred to herein as "Gree"), MJC America, and MJC Holdings were each engaged in the business of designing, manufacturing, supplying, distributing, marketing, advertising, and selling consumer appliances, including dehumidifiers or parts thereof, throughout the United States, including in the State of Illinois and including the Subject Dehumidifier at issue in this case.

16.     Defendants are subject to the jurisdiction of this Court as each Defendant does substantial business within the State of Illinois, including the marketing, selling, and distribution of the product at issue, each Defendant has purposefully availed itself of the forum, and the matter made the basis of this lawsuit arises out of and relates to each company's contacts with the State of Illinois, which contacts are significant. Defendants each derive substantial revenue from the sale of consumer products, including the product at issue, to Illinois consumers and retailers doing substantial business in Illinois, and each Defendant has sold and shipped into the State of Illinois thousands of products.

17.     Defendants each participated in placing defective dehumidifiers, including the subject dehumidifier described below, in the stream of commerce, with the expectation that they would and will be purchased and utilized by consumers in Illinois.

18.     Each of the Defendants is an actual manufacturer of the product at issue, and each is also the apparent manufacturer of the product based on its branding.

19.     Pursuant to 28 U.S.C. §1332, this Court has jurisdiction over this case because it is a lawsuit between parties of diverse citizenship and the amount in controversy exceeds $75,000. Venue is proper in this Court because the causes of action and events surrounding the loss involve a fire that occurred at a property located in Bartlett, Illinois.

20.     Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over this case because it includes claims and allegations arising under federal law, specifically, claims of violations of the Magnuson-Moss Warranty Act.

21.     Venue in this action is proper in this District Court pursuant to 28 U.S.C § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## FACTS OF LOSS COMMON TO ALL COUNTS

22.     From January 2005 to August 2013, Defendants designed, manufactured, supplied, distributed, and sold approximately 2.5 million consumer dehumidifiers throughout the United States which were included in a series of recalls announced in 2013, expanded in 2013, and re-announced in 2016 (the "Recalled Dehumidifiers"). The recalls were based on serious fire and burn hazards associated with the recalled products.

23.     Prior to March 14, 2019, the McCues purchased and owned the "Subject Dehumidifier," which was among the defective, Recalled Dehumidifiers.

24.     Prior to March 14, 2019, the McCue's used the Subject Dehumidifier in the manner intended at the Subject Property, a residential dwelling, and it was used in a manner reasonably foreseeable to the Defendants.

25.     On or about March 14, 2019, a fire occurred at the Subject Property (the "Fire").

26.     The Fire originated at, and was caused by, the defective and unreasonably dangerous condition of the Subject Dehumidifier. The Fire caused significant smoke and fire-related property damage in the Subject Property, along with other damages and inconveniences.

27.     As a result of the March 14, 2019 Fire, the McCues suffered property damage and other damage to the Subject Property and its contents, along with the loss of use of the property, which damages required remediation.

6

28.     As a result of the March 14, 2019 fire, Travelers paid insurance benefits to and on behalf of the McCue's in accordance with the terms and conditions of the Policy and in excess of $531,802.41.

## RECALL OF DEHUMIDIFIERS BY GREE

29.     The recalls of Gree dehumidifiers, including the Subject Dehumidifier at issue in this lawsuit, were based on serious fire and burn hazards associated with the recalled products.

30.     Gree made unauthorized use of the Underwriters Laboratories ("UL") certification mark on Recalled Dehumidifiers despite knowing that the Recalled Dehumidifiers did not comply with the applicable UL flammability standards.

31.     Although each and every one of the Defendants knew that the Recalled Dehumidifiers were not compliant with UL flammability standards, they nonetheless designed, manufactured, sold, offered for sale, distributed in commerce, advertised, marketed, and imported dehumidifiers bearing the UL mark.

32.     At the time the Subject Dehumidifier was purchased in July 2012, the Defendants had actual knowledge that it was defective, but they failed to properly act to stop its sale and to alert retailers and consumers.

33.     Gree Zhuhai and Gree USA made material misrepresentations to the Consumer Product Safety Commission ("CPSC") by stating that the Recalled Dehumidifiers were compliant with UL standards and in other respects, including slow pedaling the scope and significance of problems with the Recalled Dehumidifiers.

34.     Gree did not notify the CPSC about the defects and noncompliance of its dehumidifiers until March of 2013, long after it was actually aware that the Recalled Dehumidifiers were defective.

35.     As a result of the foregoing, on March 25, 2016, CPSC's Office of General Counsel obtained the provisionally-accepted maximum penalty for each violation alleged by the CPSC, and Gree agreed to pay a civil monetary penalty of $15,450,000 and to implement a compliance program.

36.     As a result of the Defendants actions related to the Recalled Dehumidifiers and misrepresentations made to the United States government, certain employees and representatives of these companies were criminally indicted by the United States Department of Justice in April 2019.

## COUNT I – STRICT PRODUCTS LIABILITY
### (ALL DEFENDANTS)

37.     Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein at length.

38.     The Subject Dehumidifier was unreasonably dangerous at the time it left the possession and control of Defendants because:

   a. It was designed and manufactured in such a way as to cause a malfunction and ignite a fire;

   b. It failed to remove humidity in a safe manner as would be expected by the ordinary consumer;

   c. It lacked adequate safety features or safeguards to prevent the Subject Dehumidifier from igniting a fire at the Subject Property;

   d. Defendants failed to properly inspect and test the Subject Dehumidifier to protect against a fire hazard;

   e. The Subject Dehumidifier was constructed with plastic insufficient to withstand temperatures that could be achieved and expected with foreseeable use of the product;

f. Defendants failed to properly inspect and test the Subject Dehumidifier to ensure that it was safe and not unreasonably dangerous when used to reduce humidity in a residential setting;

g. The Subject Dehumidifier was designed, manufactured, marketed, distributed, and sold for the purpose of reducing humidity in a residential setting, though it had been manufactured and designed with materials, which were inadequate for such a purpose and which presented a fire hazard;

h. The Subject Dehumidifier was labeled, marketed, distributed, supplied, and sold for the purpose of reducing humidity in a residential setting even though it was unsafe and unreasonably dangerous when used for this intended application;

i. The Subject Dehumidifier was designed and manufactured without adequate warning to the intended users that it posed a fire risk when used for the intended purpose of reducing humidity in a residential setting;

j. The Subject Dehumidifier was designed and manufactured in such a way as to cause overheating at the control panel within the product that posed a risk of fire when used for the intended purpose of reducing humidity in a residential setting;

k. The Subject Dehumidifier was otherwise defective and unreasonably dangerous in its design, manufacture, assembly, and with respect to its warnings; and/or

l. The Subject Dehumidifier's control device that was intended to turn off power to the machine when it achieved an unsafe temperature failed to adequately perform its function, such that the dehumidifier overheated and started on fire.

39. The aforementioned conditions rendered the Subject Dehumidifier a defective and unreasonably dangerous product.

40. Defendants had actual knowledge that the Subject Dehumidifier was defective in design and manufacture, and that a loss, such as the fire in this action, had a substantial likelihood of occurring.

41. As a direct and proximate result of one or more of the aforementioned defective and unreasonably dangerous conditions or other such conditions, the Subject Dehumidifier suddenly and calamitously ignited and burned in the Subject Property, causing significant smoke

and fire-related property damage to the Subject Property and other property located therein, in addition to causing additional related expenses. Plaintiff has paid over $100,000 to remediate the damages caused by the defective Subject Dehumidifier.

42.     Each of the Defendants hereto sold the product at issue.

43.     Defendants Gree USA, Inc., Gree Zhuhai, and Gree Hong Kong designed and manufactured the product at issue and are manufacturers under Illinois law.

44.     Defendants MJC American and MJC Holdings held themselves out as the actual manufacturer of the Subject Dehumidifier by branding the product with their marks and, as such, are manufacturers of the product under Illinois law and the apparent manufacturer doctrine.

45.     In addition, at the time the Subject Dehumidifier was sold by each Defendant, they each had actual knowledge that it was defective.

**WHEREFORE**, Plaintiff, Travelers, as subrogee of Mark and Jill McCue, requests that judgment be entered in its favor and against the Defendants on Count I, in an amount to be determined by a jury, together with costs, any other damages allowed by law and any further relief the Court deems equitable and just.

## COUNT II – NEGLIGENCE
### (ALL DEFENDANTS)

46.     Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein at length.

47.     The Defendants owed a duty to the McCues and the general public, to source, test, inspect, market, distribute and sell dehumidifiers with reasonable care, and Defendants had a duty to protect the McCues from foreseeable and unreasonable risk of harm.

48.     The Defendants breached this duty by, among other things, negligently sourcing, testing, inspecting, distributing, and selling defective dehumidifiers, including the Subject

Dehumidifier, without properly ensuring appropriate quality assurance and quality control procedures were followed, without requiring business partners to demonstrate the safety of potentially dangerous products, and for failing to conduct any independent testing on the products peddled by Defendants to thousands of customers in Illinois and throughout the United States.

49.     As is set forth more fully above, Defendants knew or should have known that the dehumidifiers they sold, in ordinary and foreseeable use, created unreasonable safety risks and would fail to perform as intended, resulting in fires and related property damage, because they were designed and built with inferior plastic, an inferior thermal cutoff device, and other components that could easily overheat under normal use conditions.

50.     Defendants knew or should have known that the dehumidifiers, including the Subject Dehumidifier, created dangerous and unreasonable safety risks as the dehumidifiers had defects which caused them to overheat, smoke, catch fire and ignite other combustible materials in homes and businesses. Defendants knew or should have known that the dehumidifiers, including the Subject Dehumidifier, had defects that could cause catastrophic property damage, personal injury and/or death.

51.     Based on this knowledge, Defendants had a duty to disclose to the McCues and other consumers the serious safety risks created by their dehumidifiers, and a duty to disclose the defective nature of their dehumidifiers.

52.     Defendants had a further duty not to put defective dehumidifiers on the market, including the Subject Dehumidifier, and a continued duty to recall unsafe dehumidifiers from customers, as well as a duty to replace or otherwise remove unsafe dehumidifiers from the market.

53.     Defendants failed to exercise reasonable care with respect to the sourcing, testing, inspection, marketing, branding, distribution and sale of dehumidifiers.

54.     As a direct and proximate result of the negligent acts and omission set forth above, consumers like Mr. and Mrs. McCue purchased defective dehumidifiers without the knowledge of these defects or their serious safety risks.

55.     As a direct and proximate result of Defendants' negligence, Plaintiff's subrogees suffered losses and damages including destruction of property, debris removal, clean up/board up, and emergency expenses, and other incidental costs associated with recovering from the fire. In accordance with the terms and conditions of the policy issued to Plaintiff's subrogees, Plaintiff paid  in excess of $500,000 for the damages described herein.

**WHEREFORE**, Plaintiff, Travelers, as subrogee of Mark and Jill McCue, requests that judgment be entered in its favor and against the Defendants on Count II, in an amount to be determined by a jury, together with costs, any other damages allowed by law and any further relief the Court deems equitable and just.

## COUNT III – BREACH OF IMPLIED WARRANTY OF FITNESS
### (ALL DEFENDANTS)

56.     Plaintiff re-alleges the consistent allegations in Paragraphs 1 through 55 and incorporates them herein by reference.

57.     Defendants has reason to know the particular purpose for which the Subject Dehumidifier was to be used.  Defendants had reason to know that the buyer was relying on the skill and judgment of the Defendants to select or furnish suitable products. The product supplied by Defendants was unfit for the particular purpose for which it was purchased.

58.     The lack of fitness for the product's purpose was a legal cause and proximate cause of Plaintiff's damages. Defendants are liable to Plaintiff for breach of implied warranty of fitness.

**WHEREFORE**, Plaintiff, Travelers, as subrogee of Mark and Jill McCue, requests that judgment be entered in its favor and against the Defendants on Count III, in an amount to be

determined by a jury, together with costs, any other damages allowed by law and any further relief the Court deems equitable and just.

<u>**COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</u>
**(ALL DEFENDANTS)**

59.     Plaintiff re-alleges the allegations in Paragraphs 1 through 58 and incorporates them herein by reference.

60.     The Subject Dehumidifier was subject to an implied warranty of merchantability under Illinois law which was not excluded or modified and could not lawfully be excluded or modified. The Subject Dehumidifier did not comply with the warranty of merchantability because it was unfit for the ordinary purpose for which dehumidifiers were used, as demonstrated by the fact that the Subject Dehumidifier was recalled. Defendants' breaches of implied warranty were a proximate cause of the Plaintiff's harm and resulting damages, including the full extent of the payments made by Plaintiff to and on behalf of the McCues. Defendants are liable to the Plaintiff for breach of the implied warranty of merchantability.

**WHEREFORE**, Plaintiff, Travelers, as subrogee of Mark and Jill McCue, requests that judgment be entered in its favor and against the Defendants on Count IV, in an amount to be determined by a jury, together with costs, any other damages allowed by law and any further relief the Court deems equitable and just.

<u>**COUNT V – VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.**</u>
<u>**CODE §2301 ET. SEQ**</u>
**(ALL DEFENDANTS)**

61.     Plaintiff re-alleges the consistent allegations in Paragraphs 1 through 60 and incorporates them herein by reference.

62.     Defendants' dehumidifiers, including the Subject Dehumidifier, are "consumer products" within the meaning of 15 U.S.C § 2301.

63. The Plaintiff is contractually and equitably subrogated to the rights of the McCues and, as such, steps into her shoes with respect to her rights against all Defendants. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 2301.

64. Each Defendant made written and implied warranties regarding their dehumidifiers, including the Subject Dehumidifier, to consumers, including the McCues, within the meaning of 15 U.S.C. § 2301.

65. Each Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq.* by failing to comply with the implied warranties they made to Plaintiff and to the general public.

66. As a direct result of Defendants' violations of their written and implied warranties, Plaintiff's subrogees suffered losses and damages including destruction of property, debris removal, clean up/board up, and emergency expenses, and other incidental costs associated with recovering from the fire necessitating payment by Plaintiff in accordance in accordance with the terms and conditions of the policy issued to Plaintiff's subrogees.

**WHEREFORE**, Plaintiff, Travelers, as subrogee of Mark and Jill McCue, requests that judgment be entered in its favor and against the Defendants on Count V, in an amount to be determined by a jury, together with costs, attorneys' fees, and any further compensatory, and/or statutory damages, including interest, to which Plaintiff is entitled, and any further relief the Court deems equitable and just.

Dated this 23rd day of February, 2021.

Respectfully submitted,

MATTHIESEN, WICKERT, & LEHRER, S.C.
Attorney for Plaintiff

By:     s/Stephen A. Smith
           Stephen A. Smith
           ARDC # 6311389
           Admitted to Practice

**P.O. Address:**
1111 East Sumner Street
P.O. Box 270670
Hartford, WI 53027-0670
PH.:  (262) 673-7850
FAX: (262) 673-3766
ssmith@mwl-law.com